UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
:
THE GREEN PET SHOP ENTERPRISES, LLC, :
:
                     Plaintiff, :       17-CV-6238 (JMF)
:
      -v- :       OPINION AND ORDER
:
EUROPEAN HOME DESIGN, LLC, :
:
                     Defendant. :
:
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In this suit, the Green Pet Shop Enterprises, LLC ("Green Pet Shop") alleges that European Home Design, LLC ("European Home") infringed its patent for a cooling platform for pets. European Home counters that the patent is invalid on indefiniteness grounds. Now pending are three motions filed by European Home — a motion for summary judgment and two motions to strike — as well as the parties' briefing on claim construction of the disputed terms in the patent. For the reasons below, the motions to strike and for summary judgment are denied.

## BACKGROUND

      The disputed patent, U.S. Patent No. 8,720,218 ("the '218 patent"), relates to a cooling platform that can be used for pets. *See* Docket No. 24 ("FAC"), ¶¶ 6, 21-25; Docket 57-1 ("Patent"), at 10, col. 1. The cooling platform can be used as a pet bed — that is, "as a place to rest or sleep, for pets such as cats and dogs." Patent 10, col. 1. It can be made in different sizes and shapes. *See id.* at 11, col. 3. The basic makeup of the cooling platform includes different attached layers, including a "temperature regulation layer" and a "support layer," all contained within a "covering layer." *Id.* at 12 ¶ 1. The figures in the patent illustrate this basic design by showing a cross-sectional view of the platform:



Patent 5, figure 3; *see id.* at 10, col. 1. The figures also show a "top angled perspective" of the platform in two different versions ("alternative embodiments") of the cooling platform:





Fig. 8

Patent 3, figure 1; *id.* at 7, figure 8; *see id.* at 10, col. 1 (describing the figures).

Green Pet Shop, which owns the '218 patent, sells a product that is covered by the patent, called the "Cool Pet Pad."  FAC ¶¶ 7, 14.  European Home Design also sells pet cooling mats, including through Amazon.  *Id.* ¶¶ 9, 10.  Green Pet Shop alleges that at least some of European Home Design's pet cooling mats infringe on the '218 patent.  *Id.* ¶ 11.  In counterclaims, European Home contends that the '218 patent is invalid, including because it was indefinite in violation of 35 U.S.C. § 112, ¶ 2.  *See* Docket No. 28; Docket No. 44 ("Joint Terms"), at 1.

The primary issue in front of the Court now is the proper meaning and scope of the '218 patent.  It is raised in two ways.  The first is through European Home's motion for summary judgment, which argues that the '218 patent is invalid because a term used throughout the patent — "predefined distance" — is indefinite.[1]  *See* Docket No. 56 ("MSJ Mem."), at 13-19.  The

---

[1]   For example, the term appears throughout the first claim:

3

second is through claim construction briefing submitted by both parties, in which they ask the Court to decide the proper construction of several disputed terms. *See* Docket No. 52 ("Pl. Claim Const."); Docket No. 62 ("Def. Claim Const."); Docket No. 71. ("Pl. Claim Reply"). In addition, European Home moves to strike two expert declarations submitted by Nathanial A. Lynd, an Assistant Professor at the University of Texas at Austin — one submitted in support of Green Pet Shop's claim construction briefing, *see* Docket No. 52-5 ("1st Lynd Decl."), and one submitted in opposition to European Home's motion for summary judgment, *see* Docket No. 61-9 ("2d Lynd Decl."). *See* Docket Nos. 58, 67.

## THE MOTION FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE

The Court begins with the motion for summary judgment. Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate, viewing the evidence in the light most favorable to the non-moving party, that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, including by informing the court of the basis for its motion and identifying

---

> A cooling platform for cooling an objection, the platform comprising: a temperature regulation layer having a plurality of angled segments, wherein angled segments within a sealed perimeter of the temperature regulation layer are formed by a top side and a bottom side *at a predefined distance*, and channels, wherein the channels substantially form sides by contacting the top side with the bottom side at a distance lesser than *the predefined distance* . . . .

Patent 12 ¶ 1 (emphasis added). The patent uses this "predefined distance" language repeatedly. *See, e.g.*, *id.* 12-13 ¶¶ 9, 13, 14, 16, 17, 19, 20.

4

those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 325 (1986); *EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 620 (Fed. Cir. 2015) (confirming that these standards apply in the patent context).

Here, European Home moves for summary judgment on its claim that the '218 patent is invalid on indefiniteness grounds. Federal patent law requires a patent specification to conclude with "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2 (2006); *see Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 902 n.1 (2014). A lack of definiteness in the claim renders the patent invalid. *See Nautilus*, 572 U.S. at 902. The definiteness requirement "strikes a 'delicate balance' between 'the inherent limitations of language' and providing 'clear notice of what is claimed.'" *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (citing *Nautilus*, 572 U.S. at 909 (internal citations omitted)). Under this standard, "absolute precision" is not required. *Nautilus*, 572 U.S. at 910. But "reasonable" certainty is: "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 901, 910.

In evaluating whether a patent meets this standard, "definiteness is to be evaluated from the perspective of someone skilled in the relevant art" and from the perspective of that person at the time the patent was filed. *Id.* at 908. To determine how a person of ordinary skill in the art would understand the claim term at issue, a court looks first to "the language of the claims themselves." *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016). The language of the claims must be given their "ordinary and customary

meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). The claims, however, "must be read in view of the specification, of which they are a part," because the "specification is the single best guide to the meaning of a disputed term." *Trustees of Columbia*, 811 F.3d at 1362 (internal quotation marks omitted). The claims must also "be read in light of the patent's . . . prosecution history." *Nautilus*, 572 U.S. at 908. A court may also rely on extrinsic evidence, such as dictionary definitions, expert testimony, treatises, and the prosecution history of related patents, so long as it does not contradict the patent documents. *See Trustees of Columbia*, 811 F.3d at 1362-63; *Phillips*, 415 F.3d at 1317. But "such evidence is generally of less significance than the intrinsic record." *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1380 (Fed. Cir. 2016) (citing *Phillips*, 415 F.3d at 1317).

Applying these standards here, the Court concludes that summary judgment must be denied. European Home argues that the '218 patent is invalid because the term "predefined distance" is indefinite in two ways. *See* MSJ Mem. 13, 15. First, it argues that the term is indefinite because "relative dimensions provide no objective measure of the 'predefined distance' and cannot be translated into meaningfully precise scope of the term." *Id.* at 15. But the Federal Circuit has repeatedly held that "relative terms — [like] 'substantial' and 'high' — [are] sufficiently definite." *One-E-Way, Inc. v. Int'l Trade Comm.*, 859 F.3d 1059, 1063 (Fed. Cir. 2017); *see also* 3 Chisum on Patents § 8.03 (2018) (citing cases). The term "predefined distance" is no different. The claim states that the angled segments and channels — the things spaced "at a predefined distance," according to the patent — are contained "within a sealed perimeter of the temperature regulation layer." Patent 12 ¶ 1; *see also id.* 12-13 ¶¶ 14, 16, 17, 19, 20. From this, it is plain that the "predefined distance" is "relative to" (and indeed must be less than) the size of the temperature regulation layer. *See Exmark Mfg. Co. v. Briggs & Stratton*

*Power Prods. Grp., LLC*, 879 F.3d 1332, 1345-46 (Fed. Cir. 2018). The rest of the specification (including the figures and diagrams that form part of the specification, *see In re Skvorecz*, 580 F.3d 1262, 1269 (Fed. Cir. 2009)) reveals that the temperature regulation layer is close to the same length and width as the cooling platform. *See* Patent 3, 5, 7, 10. Taken together, this is enough for a person of ordinary skill in the relevant art to understand the basic parameters of "predefined distance" as used in the patent.

Second, European Home contends that the term is indefinite because "predefined distance" describes both the angled segments and the channels, without clarifying when it refers to one or the other. MSJ Mem. 15-16; MSJ Reply 7. It is certainly true that "the contested language is not a model of clarity." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002). At the same time, "it is also fairly simple and intelligible, capable of being understood in the context of the patent specification." *Id.* The claim makes clear that there are "angled segments," "channels" that form the sides of those angled segments, and a longer distance associated with the angled segments than the channels. *See* Patent 12 ¶ 1. The specification explains the relationship between these parts, with reference to numbered elements on the diagram, as follows:

- "[T]he temperature regulation layer 110 includes a plurality of angled segments 120 formed by a plurality of channels 130. The channels 130 effectively space the top and bottom sides of each angled segment 120 at a predefined distance. In an embodiment, the predefined distance can equal zero, thus completely forming each angled segment 120 and cutting off any interconnection or communication therein." *Id.* at 10, col. 2.

- "[T]he angled segments 120 are formed by a top side and a bottom side at a predefined distance, and by channels 130. In an embodiment, the channels 130 may completely segment the plurality of angled segments 120." *Id.* at 11, col. 4.

- "[T]he presence of the predefined distance from the top and bottom of the angled segment 120, essentially prevents the dispersion of the composition 110A from the pressure the object exerts on the cooling platform 100." *Id.* at 12, col. 5.

Taken together, these claims and specifications clarify that there are two predefined distances: one for the angled segments, which defines how tall the segments are; and the other for the channels that separate the segments, which determines whether there are multiple, separated segments or just one large segment. They also clarify that the predefined distance of the segment height must be greater than zero, while the other predefined distance, concerning the channels, must be less than the segment height and can be zero.

For these reasons, the Court concludes that the term "predefined distance," when read in light of the specification delineating the patent, "inform[s], with reasonable certainty, those skilled in the art about the scope of the invention." *See Nautilus*, 572 U.S. at 901. Professor Lynd's second declaration reinforces this conclusion. Professor Lynd explains that, as a person of ordinary skill in the relevant art, it is clear to him that "predefined distance" is used "to distinguish the thickness of the pad at selected points within the mat." 2d Lynd Decl. at 4. He also explains that a person of ordinary skill would understand the lesser distance to refer to the distance of the channels, not the angled segments, because the patent says that the lesser distance can be zero and it would be "nonsensical" if the distance of the angled segments was zero. *See id.* at 5. Because this testimony "parallel[s] the patent specification's disclosure," it may be considered. *See One-E-Way*, 859 F.3d at 1063; *Exmark*, 879 F.3d at 1345-46. And, in the absence of competing expert evidence, it reinforces the Court's conclusions based on intrinsic evidence. *See One-E-Way*, 859 F.3d at 1063.[2]

---

[2] European Home moves to strike Professor Lynd's second declaration. *See* Docket No. 67. But the Court does not rely on the declaration beyond the portion referenced above, so European Home's motion to strike the unrelied-upon parts of the declaration is moot. *See, e.g.*, *Fabrication Enters., Inc. v. Hygenic Corp.*, 64 F.3d 53, 59 n.5 (2d Cir. 1995) (noting that a court can, without directly granting a motion to strike, simply "decline[] to consider evidence" from inadmissible declarations). And European Home's two more categorical challenges to Lynd's testimony — which include challenges to the referenced portion of the second declaration — are

8

Accordingly, European Home's motion for summary judgment is DENIED.

## CLAIM CONSTRUCTION

The Court turns, then, to claim construction. "The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (internal quotation marks and alterations omitted). "When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." *Id.* As during summary judgment, during claim construction, the "[w]ords of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." *Id.* (citing *Phillips*, 415 F.3d at 1312-13). Again as during summary judgment, during claim construction, the Court looks to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (internal quotation marks omitted). When the ordinary meaning of the claim language is "readily apparent even to lay judges," claim

---

without merit. First, Green Pet Shop is not judicially estopped from arguing that Professor Lynd is skilled in the relevant art by the positions it took in prior litigation because the court in that litigation did not adopt Green Pet Shop's position. *See, e.g.*, *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005) (noting that judicial estoppel is "limited . . . to situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, *and* [where] that earlier position [was] adopted by the tribunal to which it was advanced" (emphasis added) (internal quotation marks omitted)). Second, as an expert in temperature regulating processes, Professor Lynd is qualified to testify as a person of ordinary skill in the art. *See* 2d Lynd Decl. 1-2. Nothing in the patent is so specific to pets, as opposed to temperature regulation generally, as to require experience in the pet products market. *See SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1373 (Fed. Cir. 2010) (allowing an expert whose experience included work with the polymer materials at issue, but not with the specific product at issue). Accordingly, European Home's motion to strike the second Lynd declaration is DENIED.

construction "involves little more than the application of the widely accepted meaning of commonly understood words." *O2 Micro*, 521 F.3d at 1360.

Here, the disputed patent terms are as follows: "predefined distance"; "pressure activated" and "endothermically activated and endothermically deactivated upon the application and release of pressure, respectively"; and "composition." *See* Joint Terms 1-4.[3] The Court will address each term in turn, drawing as appropriate on a prior decision from the Northern District of Illinois construing the '218 patent, *Green Pet Shop Enterprises, LLC v. Maze Innovations, Inc.*, No. 15-C-1138, 2016 WL 7451629 (N.D. Ill. Dec. 28, 2016), as it is persuasive authority that the Court finds well reasoned, *see Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 839-40 (2015) ("[P]rior cases . . . sometimes will serve as persuasive authority.").

**A. "Predefined Distance"**

The first dispute term is the one discussed above: "predefined distance." European Home does not offer a construction of the term; and Green Pet Shop argues that no construction is necessary, but, if one is, that the term means "established distance." Joint Terms 1. It is well established that "dictionary definitions may be consulted in establishing a claim term's ordinary meaning." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003). Dictionary definitions inform the proper construction of a term because there is "a strong presumption that claim terms carry their ordinary meaning as viewed by one of ordinary skill in

---

[3] Although the parties also include "recharging" in their Joint Disputed Claim Terms Chart, they agree that the term is properly construed to mean "reversible." *See* Joint Terms 3 & n.3. Because the parties do not dispute this construction and it accords with the ordinary meaning of the term, the Court finds that "recharging" is properly construed as "reversible." *See also Green Pet Shop Enterprises, LLC v. Maze Innovations, Inc.*, No. 15-C-1138, 2016 WL 7451629 (N.D. Ill. Dec. 28, 2016), at *5 ("[T]he Court construes 'recharging' as 'reversible.'"); *see Hamilton Beach Brands, Inc. v. f'real Foods, LLC*, 908 F.3d 1328, 1338 (Fed. Cir. 2018) (stating that a court should not adopt a new meaning for a term as to which the parties have agreed and have not briefed during claim construction).

the art." *Id.* (internal quotation marks omitted). That presumption holds here because the parties agree that "[t]here is no evidence of record that the term 'predefined distance' has a particular meaning in the background science or relevant art during the relevant time." Docket No. 57, ¶ 27; MSJ Reply 1 n.1. Dictionaries define "predefined" to mean "defined in advance" or "defined, established, or prescribed beforehand." *See* Merriam-Webster, "predefined," https://www.merriam-webster.com/dictionary/predefined; Oxford English Dictionary Online, "predefined, adj.," http://www.oed.com/view/Entry/266669. These definitions confirm that "predefined" can mean "defined" or "established" and need not involve an explicit timing component (i.e., defined in advance). Moreover, Dr. Lynd's uncontested testimony is that a person of ordinary skill in the art would understand "predefined" to mean an "established distance." 2d Lynd Decl. 3, 6. Accordingly, the Court finds that "predefined distance" is properly construed to mean "established distance."

## B. "Pressure Activated," "Endothermically Activated," and "Endothermically Deactivated"

The next dispute concerns whether the terms "pressure activated," "endothermically activated," and "endothermically deactivated" imply causation. The parties agree that "pressure" means "force" or "force per unit area" and that "activated" means "made operative by" or "triggered." *See* Def. Claim Const. 15; Pl. Claim Const. 11-13. Thus, their dispute regarding the term "pressure activated" — whether or not it means activated "solely" by force, *see* Joint Terms 2 — calls upon the Court "only to determine whether 'pressure' is the sole means of activating the claimed composition," Def. Claim Const. 15. The dispute regarding "endothermically activated" and "endothermically deactivated" similarly requires the Court to answer only the causation question — that is, whether the composition absorbs and emits heat "solely" because of the application and release of pressure. *See* Joint Terms 4; Def. Claim Const. 14. This too is

because the parties essentially agree that "endothermically activated" means "absorbs heat" and "endothermically deactivated" means "emits or releases heat." *See* Joint Terms 4.

Turning first to the undisputed terms, with respect to "pressure" and "activated," the Court finds that the terms "need[] no construction" because they have a "plain and ordinary meaning." *See O2 Micro*, 521 F.3d at 1361. "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims." *Id.* at 1362 (internal quotation marks and alterations omitted). There is no argument over the scope of the word "pressure" here, and the word has a well-understood definition. *See id.* Indeed, the best way to convey the concept of pressure is to use the term "pressure," not its definition as "force per unit area." Thus, the Court finds that the term "pressure" needs no alternative construction here. *See also Maze Innovations*, 2016 WL 7451629, at *1 (concluding the same). The same is true of the term "activated," which, on its own, requires no construction. *See id.* at *2. By contrast, the Court finds that construction is necessary as to "endothermically activated" and "endothermically deactivated" because the terms are not well-understood. The proper construction, as the parties agree and the Court adopts, is that "endothermically activated" means "absorbs heat" and "endothermically deactivated" means "releases" or "emits heat." *See* Joint Terms 4; *see also Maze Innovations*, 2016 WL 7451629, at *5 ("A person of ordinary skill in the art would read the phrase 'endothermically activated,' in the context of the intrinsic evidence, to mean 'absorbs heat.'"); *id.* at *6 ("[T]he Court construes 'endothermically deactivated' as 'releases heat.'").

Turning next to the causation dispute about all three terms, the Court does not adopt European Home's contention that pressure is the "sole means" of activating the composition. European Home is correct that the claims refer only to "pressure activated" compositions. *See,*

*e.g.*, Patent 12 ¶ 1 ("a pressure activated recharging cooling composition within the temperature regulation layer, the pressure activated recharging cooling composition endothermically activated and endothermically deactivated upon the application and release of pressure, respectively"). But claims must be read in light of the specifications, *see Nautilus*, 572 U.S. at 901, and the specifications here make clear that the compositions "can be activated by a wide variety of means, e.g. the addition of water," Patent 11, col. 3. European Home's argument regarding the prosecution history supports this interpretation because it shows that the Patent Examiner and Green Pet Shop viewed the pressure activation as crucial to the invention, but also that they never limited the invention to activation solely by pressure. *See* Def. Claim Const. 19-21. There is no reason for the Court to impose this limitation now, given that "the claim language itself contains no such . . . limitation." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1346 (Fed. Cir. 2015). Accordingly, the Court finds that pressure is not the sole activator. Instead, "pressure activated" must be construed to mean "activated at least in part by pressure," and "endothermically activated and endothermically deactivated upon the application and release of pressure, respectively" must be construed to mean "absorbs heat and emits heat upon, at least in part, the application and release of pressure, respectively."

## C. "Composition"

Finally, European Home argues that the term "composition" should be construed to mean only the composition specified in Claims 5, 10, and 14 — that is "thirty percent carboxmethyl cellulose; twenty percent water; thirty-five percent polyacrylamide; and at least fifteen percent alginic acid" (the "CMC composition"). *See* Patent 12-13, col. 5-7; Def. Claim Const. 21. First, European Home argues that Green Pet Shop defined "composition" in the patent as the CMC composition and that it disavowed any broader scope in the prosecution history. *See* Def. Claim

13

Const. 22-24. But European Home acknowledges that this construction is based on, and a step beyond, a reading of "pressure activated" as "activated solely by pressure," *see id.* at 22-23, and the Court has already rejected that construction. In any event, the Court finds that Green Pet Shop did not narrow the definition (that is, "act[] as its own lexicographer") or disavow a broader definition here. A patentee may "act[] as his own lexicographer and imbue[] the claim terms with a particular meaning or [may] disavow[] or disclaim[] scope of coverage, by using words or expressions of manifest exclusion or restriction." *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003) (internal quotation marks omitted). But "[t]he standards for finding lexicography and disavowal are exacting." *MPHJ Tech. Investments, LLC v. Ricoh Americas Corp.*, 847 F.3d 1363, 1374 (Fed. Cir. 2017) (internal quotation marks omitted). "To act as a lexicographer, a patentee must clearly set forth a definition of the disputed claim term and clearly express an intent to redefine the term." *Id.* (internal quotation marks omitted). That is, the patentee must use the narrowed language to define a claim term, not a "preferred embodiment." *E-Pass Technologies*, 343 F.3d at 1369. That is not how the '218 patent uses the term "composition." Instead, "composition" is described as the CMC composition only in dependent claims describing alternative embodiments. *See, e.g.*, Patent 12 ¶¶ 5, 10.[4] Indeed, the specification states not that the composition is the CMC composition, but that "the composition 110A can encompass a variety of cooling and heating compounds." *Id.* at 11, col. 3; *see also id.* at 11, col. 4 ("[d]epending on the composition 110A used"). By contrast, when the specification refers to the composition as the CMC composition, it prefaces that discussion with the phrase "In

---

[4] A "dependent claim" is a commonly used patent term that refers to claims that further describe, and thus narrow, an earlier, independent claim. *See In re Tanaka*, 640 F.3d 1246, 1248 (Fed. Cir. 2011) (noting that "the dependent claim is necessarily covered by its antecedent independent claim"); *Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002) ("[D]ependent claims necessarily add limitations to the claims from which they depend . . . .").

14

this embodiment . . ." *Id.* at 11, col. 3, 4. Nor does European Home identify a specific instance in the patent prosecution history when Green Pet Shop disavowed the use of any composition other than the CMC composition. *See* Def. Claim Const. 22-24. In short, European Home fails to meet the "exacting" standards for proving lexicography and disavowal.

Second, European Home argues that Green Pet Shop defined "composition" through a "means-plus-function" approach in the patent. *See id.* at 24-25. Means-plus-function claiming "occurs when a claim term is drafted in a manner that invokes 35 U.S.C. § 112 [¶] 6," which allows an element in a claim to "'be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof.'" *Williamson*, 792 F.3d at 1347 (quoting 35 U.S.C. § 112). "[W]hen a claim term lacks the word 'means,'" the presumption is that Section 112 ¶ 6 does not apply. *Williamson*, 792 F.3d at 1348. That presumption can be overcome, however, "if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* (internal quotation marks omitted). Here, the full description of the composition is "a pressure activated recharging cooling composition." *See, e.g.*, Patent 12 ¶ 1. This description sufficiently defines the structure and function of the composition as a substance (a "mixture of elements," in Green Pet Shop's proposed definition) that cools upon the application of pressure. Although European Home is correct that this language does not specify the exact makeup of the composition, the patent does not extend to all mixtures of elements; it extends only to mixtures that cool upon application of pressure. *Cf.* Def. Claim Const. 25 n.8. For these reasons, the presumption that Section 112 ¶ 6 does not apply is not rebutted and "composition" is construed according to its ordinary definition, not the limited CMC definition.

The last issue is whether "composition" needs construction at all. Because the term can have a number of meanings, *see, e.g.*, Merriam-Webster, "composition," https://www.merriam-webster.com/dictionary/composition, construction of the term is necessary. Here, "composition" is properly construed as a "mixture of elements" because that term captures the physical nature of the referenced composition, in accordance with the patent's diagrams identifying a physical "composition." *See* Patent 5, 9, 10, col. 1. Accordingly, the Court finds that the term "composition" should be construed here to mean a "mixture of elements."[5]

## CONCLUSION

For the reasons stated above, European Home's motion for summary judgment and motions to strike are DENIED. With respect to the parties' disputes concerning claim construction, "predefined distance" is construed to mean "established distance"; "pressure activated" is construed to mean "activated at least in part by pressure" and "endothermically activated and endothermically deactivated upon the application and release of pressure, respectively" is construed to mean "absorbs heat and emits heat upon, at least in part, the application and release of pressure, respectively"; "composition" is construed to mean a "mixture of elements"; and "recharging" is construed to mean "reversible."

The parties shall appear for a pretrial conference on **March 28, 2019**, at **2:45 p.m.** By **Thursday of the week prior to the pretrial conference**, the parties shall file on ECF a joint

---

[5] European Home also seeks to strike the first Lynd declaration. *See* Docket No. 58. But because the Court not relied at all on the first Lynd declaration, European Home's motion is DENIED as moot. Along the same lines, the parties' halfhearted request for a *Markman* hearing — which they acknowledge is not necessary, *see* Docket No. 69 — is DENIED because the Court has relied very little, if at all, on Professor Lynd's opinions and the parties proffer no other witnesses.

letter, not to exceed three pages, regarding the status of the case and the parties' proposed next steps, including a proposed schedule going forward.

The Clerk of Court is directed to terminate Docket Nos. 55, 58, and 67.

SO ORDERED.

Dated: March 13, 2019
New York, New York

JESSE M. FURMAN
United States District Judge